Good morning, Your Honors. My name is William Ware and I'm here on behalf of the petitioner. Before proceeding, may I direct the court and counsel to two corrections that I would like to make in the petitioner's opening brief. On page 10 on line 11 where it states that Maria Martelena Melendez-Orellana was granted asylum on April 12, 2003. That should be changed to 2004. And on page 31, line 3, under the heading of C where it states that it says AR Administrative Record 156. That should be changed to 209 to 210. Okay. Thank you. The immigration judge in this case found that Mr. Melendez-Orellana suffered past persecution and that he even suffered atrocious past persecution that would merit a consideration for humanitarian, on humanitarian grounds, that he be granted political asylum. And so I think there are really two issues that I would like to present to the court today. And the first one has to do with changed country conditions. And the second one would be the abuse of discretion on the part of the immigration judge. What was the name of the immigration judge? Judge Tway. Who? Judge Tway from San Francisco. Oh, okay. Yeah. So I would first like to address the issue of the changed country conditions as it relates to the immigration judge's denial of withholding of removal and asylum. The Department of Homeland Security did not introduce evidence that on an individualized basis rebutted the presumption that Mr. Melendez-Orellana's life or freedom would be threatened if he were removed to El Salvador, which is based on the past persecution he suffered at the hands of the Salvadoran Army. The Department of Homeland Security introduced the 2003 Department of State Country Report for El Salvador as the sole evidence in an attempt to show that changed country conditions in El Salvador. And as the petitioner's brief has discussed, that report even documents that the Salvadoran government, the Salvadoran government's sanctioned or controlled entities are continuing to commit human rights violations in the form of killings and physical abuse, some of which are reported as politically motivated. And this court has repeatedly held, and specifically in the cases of Rios v. Ashcroft, 287 F. 3rd, 895, Garcia Martinez v. Ashcroft, 371 F. 3rd, 1066, and Lopez v. Ashcroft in 366 F. 3rd, 799, that a State Department report alone is not sufficient to rebut the presumption of future persecution in the case where an alien seeking asylum or withholding of removal has established past persecution or that his life or freedom have been threatened. This court has held that the government must submit evidence that demonstrates on an individualized analysis of how changed country conditions will affect the specific alien's situation. The Department of Homeland Security failed to introduce such evidence. And therefore, on this record, the Department of Homeland Security has failed to rebut the presumption that Mr. Melendez has a well-founded fear of future persecution and that his life and freedom would be threatened if he were removed to El Salvador. And the second argument I'd like to address is the judge's abuse of discretion in denying asylum on humanitarian grounds. And the previous argument might be moot if this court were to find the immigration judge to abuse his discretion in denying Mr. Melendez's asylum on humanitarian grounds due to the atrocious past persecution he suffered at the hands of the Salvadoran Army and pursuant to the BIA decision in matter of Chen and the 8th Code of Federal Regulations, 208.13b.1.3i. What specifically was the abuse of discretion in your view? I was just going to get to that point, that in exercising his discretion to deny the asylum, the judge failed to adhere to the requirement of weighing all relevant factors, both favorable and unfavorable, by evaluating all of them, assigning weight to each one separately, and then to all of them collectively. And haven't we said that you don't have to, there's no mechanized approach that has to be used and no specific articulation requirement? I believe that the immigration judge is required to do that balancing test and discuss each one of the favorable factors and balance those against the unfavorable factors. What case authority, what case says that each and every factor has to be specifically discussed in the IJ's opinion? Well, I believe that there are several cases. What's your best one? It says each factor has to be discussed. I believe, Your Honor, that Kaloubi v. Ashcroft, and that's at 364 F. 3rd, 1134. Is that in your brief? Yes, it is. I've got three more cases as authority, but, Your Honor, I can't say that those cases specifically say, specifically answer your question. However, there are many cases, including a BIA decision in the matter in Ray Edwards, which I've also cited in my brief, that requires that, you know, specific balancing test of all favorable and unfavorable factors. What's the language in Kaloubi that you rely upon to say that each factor must be specifically discussed in the IJ's decision? It says all of them must be considered and weighed, but where does it say each one must be discussed? It doesn't say that, Your Honor. I see, I think in my quote here on page 27 of the Petitioner's brief, that the IJ is required to weigh favorable and unfavorable factors by evaluating all of them, assigning weight of importance to each one separately, and then to all of them cumulatively. Exactly. But you said that the IJ did not articulate that in his decision, and he could consider them without specifically listing each one. Okay. Thank you for pointing that out, Your Honor. I don't know if you want me to cite some other cases that ---- No, I just wanted to make sure that you weren't making the argument that because they were not specifically and definitively addressed in the decision, that that proves that they were not considered. But still, it sounds like the judge has to consider them, and I would think that in his decision he would have to at least mention that ---- That's not what the case authority says. Okay. Well, the immigration judge merely considered one adverse factor in reviewing his decision, and that was namely the conviction of a misdemeanor battery. The court said based on all the evidence in the record, and so we take the judge at his word. If he says he's considered all the evidence in the record, then under our case law, we presume that he has. Well, I mean, I don't see where there is any mention that he even looked at any favorable factors, and there are numerous favorable factors that existed when he denied asylum as a matter of discretion. And I have cited those other favorable factors in my brief. But I'd like to point out two particularly significant favorable factors that the IJ failed to consider, or in his written decision doesn't appear to even mention them. The separation of Mr. Melendez from his United States citizen wife and children, and the inherent hardship that would cause to every member of the family. And two, the fact that Mr. Melendez-Oriana has been granted temporary protected status in the United States, pursuant to 8 U.S. Code Section 1254A, and has continuously been eligible for that status as a national of El Salvador, entitled to temporary protective status by the designation of the Attorney General. 8 U.S.C. Section 1254A states that the Attorney General shall not remove an alien from the United States, during which period such status is in effect. Well, but that doesn't preclude the order of removal. It just precludes the effectuation of that order. Okay. And also, the IJ did recognize the fact that five members of his family had been granted asylum. Right. Well, that's another, in my opinion, significant factor that weighs in his favor. Right. But he didn't ignore it. He didn't ignore it. You're right, Your Honor. You are right on that point. You've used your time. Okay. Thank you. Thank you. It's cold in here, isn't it? Get a little heat here. Or bring in the parkas. Good morning, Your Honors, and may it please the Court. My name is Joseph Metellus, and I'm appearing on behalf of the Attorney General of the United States. The petition before this Court raises two fundamental questions. The first is whether substantial evidence supports the Immigration Court's decision to find that Petitioner no longer has a well-founded fear of being persecuted were he to return to El Salvador. The record below contains evidence that conditions have changed greatly in El Salvador since Petitioner left in 1996, and there is no record evidence of any threats against Petitioner since 1998. Substantial evidence supports the Immigration Court's decision to join the many other courts that have found changed country conditions in El Salvador. Did the judge conduct the individualized analysis? Yes, he did, Your Honor. And how did he do so? He applied the changed country circumstances that were found in the State Department report to the specific circumstances of the Petitioner. The Petitioner left El Salvador in 1996. He has not been threatened since 1998. Those facts were mentioned, and those facts were a core part of the Court's analysis, and that satisfies the individualized analysis that this Court has required. It's not merely that the judge simply relied on the State Department's finding in 2003 of changed country conditions. The State Department says that conditions have improved, and that fact must be taken into account. That's in a broad sense. Did it look in particular to the applicant? Yes, it did. It applied the analysis specific. It applied the State Department's analysis to the Petitioner's specific circumstances. Had Petitioner come in with evidence of threats more recent than he had, then that would have presented a different situation. But under these facts, the Immigration Court's analysis met the individualized analysis requirement that this Court has articulated. Counsel, in the IJ's opinion, would you point us to where he makes the individualized assessment? Well, this is a question that kind of ranges over a broad range of the issues raised in this. The immigration judge's decision is 10 pages. It needs to be read as an integrated whole. He recites all the facts in the beginning of his analysis, and he says he's basing his decision on all the facts on the record. Where is the fact? What facts, in your view, support a conclusion that there was an individualized determination regarding changed country conditions as they applied to this Petitioner? When the Immigration Court is describing what happened to the Petitioner in El Salvador, he's … Where is that? This is on record site page. I guess the analysis is 44 through, I guess, to the top of 47. Okay. So when you were saying the threat stopped at a particular time, where is that? Okay. At the top of record, at the top of page 47, this is the eighth page of the Immigration Court's decision, and the first full paragraph is a court conclusion that there is clearly profound changes in El Salvador since the time this respondent left El Salvador towards the end of 1996. Again, he's applying the State Department reports to the specific circumstances of the Petitioner. The Petitioner left in 1996. Had there been other evidence of more recent threats? How could there be evidence if he's here? The last evidence of a threat against the Petitioner was from 1998, after he came here. Oh, I see what you're saying. So it would have been possible that he was receiving threats at home to other family members or somehow became aware of them. Where is that evidence of the 1998 threat in the record? The 1998 threat is a letter that he received from his mother stating that men had come and asked her where her son was. The specific site is at page, the record page 580. Okay, but the IJ opinion doesn't reference that. Your Honor, it does on page, let me see here. I'm sorry, it's in... Well, the respondent, I mean, the immigration court admitted the letter from his mother. Right, but in terms of the IJ using that to make an individualized analysis, it's not here in the decision. Well, again, I think that you have to read the immigration court's decision as an integrated whole, and when he accepted the evidence of the mother's letter, then that was presumably part of, or not even presumably, it must be considered to be part of the immigration court's analysis. Did the judge say that it was unreasonable for the petitioner to say that his fear of persecution was unreasonable if he were returned? Well, he found the evidence of the past persecution establishes a presumption that he would be persecuted were he returned, and he specifically found that the presumption was rebutted by the evidence of the changed country circumstances. Based on the State Department book? Based on the State Department as it applied to the petitioner's specific facts. Again, what are those specific facts? Well, it's hard to say in the abstract, because had the petitioner come in with different evidence, had the petitioner come in and said, my family, all which is... What burden is that? That's not his burden, once there's a presumption. It's the government's burden to rebut that presumption. Well, once the presumption has shifted, it is the government's burden, but again, with the specific facts that were before the immigration court, he weighed those facts and decided... So it doesn't matter if he comes in with something else. He doesn't have to come in with anything else, because the presumption has to be rebutted by the government. Well, the evidence about the petitioner was before the court, and the government asked the court to apply those specific facts in this case. So in these circumstances, that's all that was warranted. The petitioner left El Salvador in 1996. There's no evidence of any threat against him since 1998. The immigration court acted well within its discretion to find that  The second issue before the court, if I may touch on it briefly, is whether the immigration court abused its discretion in denying asylum to the petitioner under the severe persecution prong of the asylum regulations. Despite noting in its decision several circumstances and equities weighing in the petitioner's favor, the immigration court nonetheless refused to exercise its discretion in the petitioner's favor because the petitioner beat his wife with a belt and then lied about the beating during the immigration court proceedings. And it was within the range of the immigration court's discretion to refuse to exercise asylum, to refuse to grant asylum to an asylum applicant under those circumstances. Where in the record did he weigh those favorable factors? Again, I think you have to read the immigration court's decision as an integrated whole. All the equities in favor of the petitioner are cited in the immigration court's decision. And he did state, as Your Honor stated earlier, he did state that he was deciding the case on all the evidence in the record. So you'll concede that he didn't mention anything specifically? No, I don't concede that. He did mention all the equities that were in favor of the petitioner. They are all cited in the court's decision. I disagree with counsel earlier when he stated that there needed to be an assignment of specific weight to each of the factors. That's not what the case law says. All that this court requires is that the immigration court, evidence that the immigration court has considered all of the favorable equities, they're all cited in the immigration court's ruling, and that suffices under this circuit's law. If I may also address very briefly two points that the petitioner raised in his reply brief that were not raised below and accordingly he failed to exhaust his administrative remedies with those issues. The first is he challenges the immigration court's finding that he had lied under oath. That finding was not challenged in the petitioner's appeal. The Board of Immigration Appeals, it's accordingly waived here. He also states that it was improper for the court to hear evidence about the crime in the immigration court proceedings below. Again, that was not raised below in the Board of Immigration, to the Board of Immigration Appeals, and it was accordingly waived here. Was the TPS issue raised below? No, it was not. And the petitioner's TPS status does not affect the timing of his removal or his asylum application here. The timing of a removal is within the discretion of the Department of Homeland Security and was not raised below to the Board of Immigration Appeals. What about the current country report? There is a more recent country report. It was issued March 6th of this year. It's not before the record. We don't know how the immigration court would have applied that, obviously, but it does not indicate any deterioration of conditions in El Salvador. El Salvador borders Mexico, does it? No, it does not border Mexico. You're trying my geography, though, Your Honor. What country borders Mexico? The United States and Guatemala, I believe, is in between. El Salvador is... Farther south than Guatemala. Borders with Guatemala. I believe so, Your Honor. What? And Honduras. You see, I think it was Life magazine, and then there was a program that ran on public television about the people, like a plane that goes through Honduras, crossing a river, a woman carrying a baby and holding on to three other kids. I didn't see that program, Your Honor. I'm sorry. Unless there are further questions. One last question. Was the petitioner convicted of perjury? There's a perjury assertion in the record. Well, the immigration court did specifically find that he lied under oath. He has not been prosecuted for perjury. Thank you. All right. We'll give you a minute for rebuttal. First of all, Your Honor, the issue of temporary protective status was raised. The judge made reference to that. Before we proceeded on the last hearing, because there were four separate hearings over a period of about six years in this case, the judge was made aware of the fact that Mr. Melendez-Orellana was under, had been granted and is continuing to be eligible for that status. And I think that's the only point I have. Where is that in the record? It's in at the time of the very last hearing. Was a specific argument made that the status precluded removal? I'm not, I'm not, I don't recall that, but I do know that it was discussed and it is in the transcript of the immigration court. Well, our concern is whether or not that specific argument was made so as to give the government an opportunity to respond. I can't, I don't, I do not recall, Your Honor. All right. We'll check it. Thank you. Thank you. The matter is submitted.
judges: Pregerson, Rawlinson, Sandoval